CLUB TELLURIDE OWNERS ASSOCI-
ATION, INC., a Colorado non-profit
corporation, Plaintiff–Appellee,

v.

Dennis MITCHELL, Defendant–
Appellant.

No. 01CA0594.

Colorado Court of Appeals,
Div. II.

July 5, 2002.

Rehearing Denied Oct. 3, 2002.

Certiorari Denied May 19, 2003.

Faegre & Benson, LLP, Colin C. Deihl,
Denver, Colorado, for Plaintiff–Appellee.

Robert Korn, Telluride, Colorado, for De-
fendant–Appellant.

Opinion by Judge JONES.

Defendant, Dennis Mitchell, appeals the
summary judgment entered in favor of plain-

tiff, Club Telluride Owners Association, Inc. (Association), for collection of past due assessments and attorney fees pursuant to the Colorado Common Interest Ownership Act, § 38–33.3–101, et seq., C.R.S.2001 (CCIOA). We reverse and remand for further proceedings.

As an initial matter, we note that Mitchell has not referenced the record as he is required to do, and he has urged on us material that is not in the record, which we may not consider. *See* C.A.R. 28.

However, the following facts are undisputed. In 1996, Mitchell purchased an undivided one-tenth interest in a timeshare unit in Phase I of the Franz Klammer Lodge, which was developed and marketed by Club Telluride Company–I, LLC (CTC–I). At closing, CTC–I paid Mitchell's first year homeowner's assessments, as part of its sales agreement with him.

Thereafter, Mitchell became obligated to pay Association dues and fees pursuant to the Condominium Declaration for the Association. The declaration provides, inter alia, that Association dues and fees "are allocated to Club Owners based on the undivided ownership interest of a Club Owner in relation to the undivided ownership interests held by all Club Owners," which is consistent with the statutory obligations set forth in § 38–33.3–315, C.R.S.2001.

As an additional sales incentive to all Phase I purchasers, CTC–I offered a "resale program." This incentive stated that because CTC–I was certain that the purchasers would be satisfied with their investments, it would pay all Phase I purchasers' homeowners association fees until CTC–I resold their units, should they relist within one year of closing. CTC–I further agreed that, under this arrangement, it would resell units in a rotation with its inventory of unsold units, selling one resale unit to every four units it sold from the developer's unsold inventory.

Within a year of closing, Mitchell wrote CTC–I to request that it enter his timeshare in the resale program. CTC–I confirmed the receipt of Mitchell's letter and stated that, "[u]p to the time of resale, all homeowners dues will be paid by [CTC–I]." After receiving CTC–I's letter, Mitchell ceased making homeowners dues payments. However, CTC–I did not pay Mitchell's dues and the Association commenced efforts to collect the dues from Mitchell as owner, but did not attempt to collect from CTC–I.

Meanwhile, CTC–I sold its interest in the development to AMMV Investments, L.L.C. Mitchell's timeshare remained unsold. As with CTC–I, AMMV did not pay Mitchell's dues, although it was aware of the terms of the resale program and entry of Mitchell's timeshare into that program. Nor did the Association take any action to collect Mitchell's dues from AMMV.

The Association filed this action against Mitchell to collect unpaid dues and for enforcement and foreclosure of its assessment lien. Mitchell counterclaimed against the Association and filed a third-party complaint against CTC–I. The trial court granted the Association's motion for a separate trial on its complaint, and later, upon Mitchell's motion, allowed joinder of AMMV as an additional third-party defendant.

The trial court granted the Association's motion for summary judgment, determined that Mitchell owed dues of $13,043, ordered foreclosure of the Association's lien, and without holding a reasonableness hearing, granted the Association's motion for attorney fees.

I.

Mitchell first contends that the trial court erred in granting summary judgment because disputed issues of fact existed. We agree.

Grants of summary judgment are reviewed de novo. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Bd.,* 901 P.2d 1251 (Colo.1995). Summary judgment is appropriate when the pleadings, affidavits, depositions, and admissions on file show that there are no genuine issues as to any material facts and that the moving party is entitled to judgment as a matter of law. We take as true allegations in pleadings that the moving party fails to controvert by admissible evidence. *Abrahamsen v. Moun-*

*tain States Tel. & Tel. Co.,* 177 Colo. 422, 494 P.2d 1287 (1972).

Mitchell argues that the trial court erred in granting summary judgment because CTC–I's or AMMV's agreement to pay his dues made them the primary obligors and the Association consented to this arrangement. Mitchell further asserts that, at all relevant times, the Association was under a degree of control by CTC–I or AMMV, such that the Association was merely an arm of the developer, thereby creating privity between the developer and the Association. We agree that disputed issues of material fact concerning the relationship among CTC–I, AMMV, and the Association preclude summary adjudication of this matter.

■ "Privity is that connection or relationship which exists between two or more contracting parties." *First Nat'l Bank v. Gilbert Marshall & Co.,* 780 P.2d 73, 75 (Colo. App.1989). Mitchell asserts that "privity assumes great importance to the Declarant developer because the [Association] manages and operates the timeshare as a hotel and is responsible for carrying out the promises inherent in the Declarant's timeshare product."

■ An obligor may effectively delegate performance to another who is willing to perform the delegated duty, but the obligor remains liable as surety unless the obligee consents to the delegation. *Headrick v. Rockwell Int'l Corp.,* 24 F.3d 1272 (10th Cir.1994)(citing Restatement (Second) of Contracts §§ 318, 329 (1981)). Thus, for the obligor to be released from liability, the obligee must agree to the delegation. *See Brooks v. Hayes,* 133 Wis.2d 228, 395 N.W.2d 167 (1986); 3 E.A. Farnsworth, *Farnsworth on Contracts* §§ 11.10 (2d ed.1998).

In a deposition, attached to Mitchell's response to the Association's motion for summary judgment, the person responsible for the sales and marketing of the Franz Klammer Lodge explained that here, as in all condominium developments, the developer took the initial role as the manager of the homeowners association. He stated that the developers, CTC–I and AMMV, were aware that "CTC–I is CTOA [the Association]."

Mitchell, as obligor, delegated to CTC–I his obligation to pay the dues owing to CTC–I's arm, the Association, and CTC–I consented to the delegation as evidenced by the correspondence between the two parties.

In our view, Mitchell has made a sufficient showing that, because the Association and the developer were, for all practical purposes, one and the same when CTC–I, and later AMMV, agreed to pay his association dues, the Association could not ignore the contract made by its closely allied developer, and its successor, and make no attempt to collect the unpaid dues from them.

■ Alternatively, the Association argues that even if a factual dispute exists concerning delegation to CTC–I, any action of the Association relieving Mitchell of his primary obligation to pay dues would be void as against public policy. The Association notes that the CCIOA provides dues that "shall be assessed against all units in accordance with the allocation set forth in the declaration." Section 38–33.3–315, C.R.S.2001. We are not persuaded.

The Association cites no case supporting its public policy argument. We read § 38–33.3–315 as prohibiting preferential assessments among units. The statute does not address agreements concerning how assessments will be paid. Moreover, the statutory scheme would not be frustrated by the Association's accepting CTC–I and AMMV as the primary obligors, while continuing to allocate dues and fees based on Mitchell's undivided ownership interest, and looking to him as surety, after having exhausted collection efforts against CTC–I and AMMV.

Therefore, we conclude that genuine issues of material fact exist as to whether CTC–I and its successor were at least primarily responsible to pay Mitchell's dues and fees. Thus, the trial court erred in granting summary judgment and also in awarding attorney fees to the Association. On remand, attorney fees collected from Mitchell should be returned to him.

## II.

Because we reverse the summary judgment order, we need not consider Mitchell's additional contentions.

The judgment is reversed, and the case is remanded for further proceedings.

Judge PLANK and Judge WEBB concur.